SAMUEL McCULLOUGH,

      Plaintiff,

v.                        Case No.  8:07-cv-1239-T-33EAJ

UNITED STATES OF AMERICA,

      Defendant.
_____/

## ORDER

This matter is before the Court on consideration of Plaintiff's Dispositive Motion for Partial Summary Judgment on Liability (Doc. # 24), Plaintiff's Dispositive Motion for Partial Summary Judgment on Defendant's Third, Seventh, and Tenth Affirmative Defenses (Doc. # 25), and Defendant's Motion for Partial Summary Judgment (Doc. # 26), all filed on January 21, 2009. The parties have filed responses to each of the above motions. (Doc. ## 27, 29, 30).

At the final pretrial conference on May 7, 2009, McCullough moved to dismiss Count II of his complaint. (Doc. # 34). The Court orally granted the motion. (Doc. # 35). The instant summary judgment motions are dispositive as to Count I, the only remaining claim in this case.

## I.  Procedural History

Plaintiff Samuel McCullough filed an administrative tort

claim with the United States Veterans Administration ("Veterans Administration") on March 10, 2006, alleging medical malpractice on the part of physicians employed by the James A. Haley VA Medical Center ("VA"). (Doc. ## 1 at 1; 1-2). McCullough claims that he suffered severe neurologic impairment because of the VA's negligence. Specifically, McCullough claims that the VA failed to properly diagnose and treat his cervical epidural abscess over the time period from February 7, 2004, through February 11, 2004. (Doc. # 1 at 1-2). Citing to the two-year statute of limitations for such claims set forth in 28 U.S.C. § 2401(b), the Veterans Administration denied the claim on March 30, 2006. (Doc. # 1-3). On September 14, 2006, McCullough filed a request for reconsideration of his claim. He never received a response.

On September 14, 2006, McCullough filed a second administrative tort claim with the Veterans Administration, asserting medical malpractice in connection with negligent care and treatment that he received at the VA nursing home facility during the time period from August 1, 2005, through September 14, 2006. (Doc. ## 1 at 4-6; 1-5). McCullough failed to receive a response to his administrative claim within six months of its filing. (Doc. # 1-3 at 3). Thus, the claim was deemed denied pursuant to 28 U.S.C. § 2675(a).

(Doc. # 1 at 1-2).

On July 16, 2007, McCullough filed his two-count complaint against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, alleging medical malpractice based upon the same grounds cited in his two administrative claims. (Doc. # 1). McCullough requests partial summary judgment on (1) liability on Count I of his complaint and (2) the Government's Third, Seventh, and Tenth Affirmative Defenses. In its response, the Government concedes that McCullough is entitled to summary judgment on the Seventh and Tenth Affirmative Defenses.[1] (Doc. # 30 at 3).

The Third Affirmative Defense, as well as the Government's Motion for Partial Summary Judgment, are both based on the Government's assertion that Count I of McCullough's complaint is barred by the two-year statute of limitations under 28 U.S.C. § 2401(b).

---

[1] In the Seventh Affirmative Defense, the Government asserts that McCullough's comparative negligence proximately caused his alleged injuries. (Doc. # 7 at 5). The Tenth Affirmative Defense reserves the right to assert third-party negligence should the evidence reveal that a third-person, including St. Joseph's Hospital, Tampa, Florida, caused McCullough's injuries in whole or in part. (Id. at 5-6).

## II. Background

The facts of this case are largely undisputed. McCullough was diagnosed with an inguinal hernia in late 2003, and was scheduled for elective hernia repair surgery at the VA on February 10, 2004. (Doc. # 24 at 3). On February 7, 2004, McCullough came to the VA emergency room ("ER") complaining of severe upper back and neck pain, which was not relieved by pain medications and exacerbated by any movement of the head and neck. (<u>Id.</u>; Doc. # 24-2 at 8). McCullough described the pain as being 9 on a scale of 10. (Doc. # 24-2 at 9). The ER physician performed a physical exam and diagnosed McCullough's problem as "acute myofascial strain." (<u>Id.</u> at 10). The ER physician did not order any diagnostic tests, but rather gave McCullough additional narcotic pain medication and a muscle relaxant, and discharged him. (Doc. # 24 at 4).

McCullough returned to the VA on February 9, 2004, still complaining of severe upper back and neck pain. (Doc. # 24-2 at 12). Ana Marie Casellas, the Licensed Practical Nurse on duty in the VA Primary Care Clinic, examined McCullough. (<u>Id.</u>). Although Nurse Casellas is unable to recall any details of her interaction with McCullough, she testified that after she conducted the initial interview, she would have put McCullough's chart in the on-call ER physician's box to

indicate that a physical exam was needed. (_Id._ at 16-17).
There is no record that any ER physician exam or diagnostic
testing took place during the February 9, 2004, visit. (Doc.
# 24 at 4).

McCullough was admitted to the VA at 7:30 a.m. on
February 10, 2004, for elective hernia surgery under general
anesthesia. (_Id._). The post-operative record reflects that
immediately following surgery McCullough had a fever of 101.6
degrees Fahrenheit and that his temperature had decreased to
100.6 degrees by the time of his discharge that same day.
(Doc. # 26-2 at 32-33). McCullough's wife was instructed to
bring McCullough back to the hospital if his temperature rose
above 102 degrees or "if any change in health" occurred. (_Id._
at 33). Other than the fever, McCullough's surgery and
recovery were unremarkable.

On February 11, 2004, McCullough returned to the VA
complaining of abdominal pain and an inability to urinate
since the surgery. (Doc. # 26-2 at 2, 23). McCullough's
temperature was documented as 100.3 degrees. (_Id._). A
bladder scan was performed and a foley catheter was inserted
through the urethra to drain his bladder. (_Id._ at 24-25).
McCullough was discharged home with the foley catheter in
place. (_Id._ at 26).

On February 12, 2004, McCullough was brought by ambulance to St. Joseph Hospital's ER in Tampa, Florida, complaining of weakness and numbness in his extremities and neck pain. (Doc. # 26-2 at 47). He had a fever of 101.4 degrees. (Id. at 47-48). McCullough's admission notes reflect an original impression of quadriparesis of unknown origin, fever "probably coming from a urinary tract infection," and "[c]hronic back pain secondary to degenerative joint disease." (Id. at 48).

After several additional tests failed to disclose the cause of McCullough's paralysis, a cervical spine MRI was ordered that evening. (Id. at 56-57). The MRI revealed prevertebral and anterior epidural abscesses with severe spinal cord compression and osteomyelitis. (Id. at 51, 56). Emergency surgery was performed to drain the abscesses and relieve the pressure on the spine. (Id. at 49; Doc. # 25-5 at 1). McCullough remained a quadriplegic after the surgery. (Doc. # 25-5 at 1). On February 20, 2004, McCullough was discharged to the VA rehabilitative unit with a diagnosis of quadriplegia. (Doc. ## 25-5 at 1; 26 at 9).

At some point during the next sixty days, McCullough consulted with the law firm of Wagner, Vaughan & McLaughlin,

P.A.[2]   (Doc. # 26 at 9).   The firm sent a letter to the Veterans Administration on April 19, 2004, requesting McCullough's medical records from February 1, 2003, to the present, along with a release signed by McCullough.   (Id.; Doc. # 26-2 at 40).   The Veterans Administration sent the records to the law firm on April 22, 2004.   (Doc. # 26-2 at 40).   McCullough's attorneys made a second request for updated records on October 5, 2004, and the Veterans Administration sent the records on October 8, 2004.   (Doc. ## 26 at 10; 26-2 at 39).

In late 2005, McCullough retained his current counsel, who sought opinions from at least two experts regarding McCullough's possible malpractice claim.   (Doc. ## 25-3 at 14; 26 at 10; 26-6 at 2-3).[3]   The evidence shows that McCullough's counsel contacted Dr. Daniel Abbott, an expert in emergency medicine, on November 21, 2005, and Dr. J. Parker Mickle, an expert in the field of neurosurgery, on December 15, 2005.   (Doc. ## 25-3 at 14; 26-6 at 2-3).   Letters sent to these

_____

[2] The record does not reflect the date that McCullough consulted with or retained Wagner, Vaughan & McLauglin.  The earliest record of the relationship is the firm's April 19, 2004, request for McCullough's medical records.

[3] The record does not reflect the exact date that McCullough consulted with or retained the law firm of Morgan & Morgan, P.A., which currently represents him in this case.

experts requested that they call counsel to discuss their opinions in detail and stated that counsel did not need anything in writing at that time. (<u>Id.</u>).

It appears that Dr. Abbott and Dr. Mickle's first written reports were sent to McCullough's attorneys on February 28, 2006, and March 6, 2006, respectively. (Doc. ## 26-7 at 2-3; 25-3 at 15). Dr. Abbott's preliminary opinion states that "there were several deviations from the standard of care" and that McCullough's symptoms from February 7-10, 2004, should have been investigated further prior to doing the elective hernia surgery. (Doc. # 26-7 at 2-3). According to Dr. Mickle, McCullough's cervical abscess pre-dated his hernia surgery and "[h]ad appropriate diagnostic and medical care been rendered to Mr. McCullough on [his visits to the VA on February 8-9, 2004] more likely than not this condition would have been detected and the resulting neurological injury avoided." (Doc. # 25-3 at 15).

## III. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996)(citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-

94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert.</u> <u>denied</u>, 456 U.S. 1010 (1982).

## IV. Analysis

The Government claims that Count I is time-barred by the two-year statute of limitations because McCullough's claim accrued on February 13, 2004, when he learned that he had been rendered a quadriplegic. (Doc. # 26 at 20). As of that date, McCullough had sufficient information about his injury to put

10

him on inquiry notice of his claim.  (<u>Id.</u> at 21).  McCullough

contends that his claim did not accrue until February 16,

2006, when Dr. Mickle informed McCullough's attorneys of the

doctor-related cause of his injuries.  (Doc. # 25 at 16).

Because his claim did not accrue until well after March 13,

2004, two years prior to the filing of his administrative

claim, McCullough argues that his claim is not time-barred.

(<u>Id.</u>).

Under the FTCA, a tort claim against the United States

must be "presented in writing to the appropriate Federal

agency within two years after such claim accrues . . . ."  28

U.S.C. § 2401(b).  The statute of limitations under § 2401(b)

is jurisdictional.  <u>Magruder v. Smithsonian Inst.</u>, 758 F.2d

591, 593 (11th Cir. 1985) ("The 2 year limitations period is

a jurisdictional requisite to suit and is strictly

construed.")  In addition, "[T]he accrual of a cause of action

under section 2401(b) is a matter of federal law."  <u>Phillips

v. United States</u>, 260 F.3d 1316, 1318-19 (11th Cir. 2001).

In general, a tort claim accrues for purposes of §

2401(b) at the time of the plaintiff's injury.  <u>United States

v. Kubrick</u>, 444 U.S. 111, 120 (1979).  However, to avoid

unjust results in medical malpractice cases, the rule has

evolved to mean that the limitations period does not begin to

run "until the plaintiff has discovered both his injury and its cause." Id. at 120, n. 7.

In Kubrick, the Supreme Court revisited the question of when a medical malpractice claim accrues under the FTCA. 444 U.S. 111, 122-25 (1979). The Supreme Court rejected a previous line of cases that held that a claim does not accrue until a plaintiff learns that his injury was negligently caused. Id. at 121-22, nn. 7-8. The Court did not believe that Congress, when it enacted the FTCA, intended that "for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment." Id. at 122. The Kubrick Court concluded that the very purpose of the limitations statute would be undermined if a plaintiff were excused from promptly seeking legal or medical advice once he was "in possession of the critical facts that he has been hurt and who has inflicted the injury." Id. at 122-23.

Relying on Kubrick, the Eleventh Circuit has found that "a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant." Price v. United States, 775 F.2d 1491, 1494 (11th Cir. 1985).

In cases involving the failure to diagnose or treat a medical condition, some circuits apply a slightly different approach. For example, in <u>Augustine v. United States</u>, the Ninth Circuit considered a case in which the plaintiff sued Air Force dental surgeons alleging that they failed to diagnose, treat, or warn him that a bump on his palate could develop into incurable metastatic cancer. 704 F.2d 1074, 1076 (9th Cir. 1983). The Government filed a motion to dismiss on the grounds that Augustine had not timely complied with the requirement under § 2401(b) that an administrative tort claim be filed within two years of accrual of the injury. <u>Id.</u> In considering the statute of limitations issue, the Ninth Circuit rejected a "mechanical application" of <u>Kubrick</u>, reasoning that a patient's identification of his injury and its cause may be more difficult in cases involving failure to diagnose, treat, or warn. <u>Id.</u> at 1078.

The <u>Augustine</u> court found that,

> Where a claim of medical malpractice is based on the failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient . . . . Rather, the injury is the <u>development</u> of the problem into a more serious condition which poses a greater danger to the patient or which requires more extensive treatment.

<u>Id.</u> (emphasis in original). The Ninth Circuit also found that

13

a claim does not accrue for purposes of § 2401(b) until the plaintiff "becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition." Id.

The Eleventh Circuit has not directly addressed application of the FTCA statute of limitations in the context of a claim based on failure to diagnose or treat a pre-existing medical problem.[4] However, several other circuits have adopted the approach advocated by the Ninth Circuit. See Hughes v. United States, 263 F.3d 272, 276-77 (3d Cir. 2001) (adopting the court's analysis in Augustine where the case involved failure to diagnose and treat an allergic reaction); Green v. United States, 765 F.2d 105, 108-09 (7th Cir. 2002) (adopting the Ninth Circuit's analysis in Augustine and finding that the plaintiff's claims were time-barred). Although not binding on this Court, these cases are

---

[4] The most analogous case found is Jones v. United States, 294 Fed. App'x 476 (11th Cir. 2008). In Jones, the plaintiff brought an FTCA claim on behalf of her infant son, who contracted Hepatitis B after a physician allegedly failed to administer a Hepatitis B vaccine to him. Id. at 477. Although the Eleventh Circuit applied the rule for medical malpractice cases found in Kubrick, it can be argued that the circumstances in Jones do not lend themselves to the modified approach discussed above because there was no pre-existing condition that worsened because of the physician's failure to diagnose, treat, or warn.

instructive.

The record establishes that the Veterans Administration received McCullough's first administrative claim on March 13, 2006. (Doc. # 1-3 at 2). Accordingly, this Court has jurisdiction under the FTCA if McCullough's tort claim accrued on or after March 13, 2004.

The Government argues that McCullough's claim accrued on February 13, 2004; the date that he had knowledge of his injury. (Doc. # 26 at 20). According to the Government, "At this time, then, McCullough had sufficient information about his injury and its ramifications to put him on inquiry notice of his claim and to seek professional help to protect his rights." (Id.). The Government further asserts that McCullough "had to know that his injury was probably connected to some act of those responsible for his treatment," even if he did not know exactly what mistake had been made. (Doc. # 26 at 21 (citing to Price, 775 F.2d at 1494)).

It is clear that McCullough became aware of his injury on February 13, 2004, and that shortly thereafter he was told that his paralysis was caused by a cervical abscess. (Doc. ## 26 at 20; 27 at 1; 27-7 at 16). This knowledge alone, however, does not cause a claim to accrue under the FTCA. "When there are two causes of an injury, and only one is the

government, the knowledge that is required to set the statute of limitations running is knowledge of the government cause, not just of the other cause." <u>Jones</u>, 294 Fed App'x at 479.

Thus, the operative question for statute of limitations purposes is whether, before March 13, 2004, McCullough was, or in the exercise of reasonable diligence should have been, aware that his paralysis was connected to some act of the medical providers at the VA. Under <u>Augustine</u>, McCullough's claim would have accrued on the date that he knew, or through the exercise of reasonable diligence should have discovered, that his paralysis was caused by the worsening of his pre-existing cervical abscess. <u>Green</u>, 704 F.2d at 1078.

The Court finds that, under either approach, McCullough's claim accrued before March 13, 2004. McCullough has conceded that he knew during his treatment at St. Joseph's Hospital from February 12, 2004, through February 17, 2004, that his paralysis was caused by a cervical abscess. (Doc. # 27-7 at 14, 16). The week before onset of his paralysis, McCullough was seen at the VA on four separate occasions. According to McCullough, he complained of severe upper neck and back pain on both his February 7, 2004, and February 9, 2004, visits, but no diagnostic tests were performed. (Doc. ## 25 at 1-2; 24-2 at 21-22). McCullough further attests that he reported

a fever at both emergency room visits and on the day of his hernia surgery, and that he was still running a fever upon his discharge from the hospital after the hernia surgery. (Doc. ## 24-2 at 20-21; 26-2 at 32; 27 at 2).

There is no conclusive evidence that McCullough knew that his paralysis was caused by the worsening of a pre-existing problem. However, McCullough was notified on or about February 20, 2004, that he was paralyzed as a result of a spinal abscess.[5] (Doc. # 27-7 at 16). A reasonably diligent person armed with this knowledge would have sought information as to when the abscess developed or when it should have been detected. This is especially so when, as here, that person had previously sought treatment on multiple occasions for severe neck pain.[6] Under the modified <u>Augustine</u> approach,

---

[5] McCullough's Affidavit reflects that while he was being treated at St. Joseph's Hospital his doctors advised him that "my paralysis was caused by a cervical abscess." (Doc. # 27-7 at 16). McCullough was transferred from St. Joseph's Hospital to the VA Rehabilitation Unit on February 20, 2004. (<u>Id.</u>; Doc. # 25-5 at 1). Thus, McCullough knew the cause of his paralysis no later than February 20, 2004.

[6] In deposition testimony, McCullough described the location of the pain when he was seen by the ER doctor at the VA. (Doc. # 24-2 at 20). Specifically, McCullough stated that he was experiencing severe pain "in this part of my neck where you see this scar." (<u>Id.</u>). McCullough further attested that he could not hold his head up and when the ER doctor lifted his head, "The pain was so intense, I had to put my head back down." (<u>Id.</u>).

McCullough's claim accrued at least as of February 20, 2004, because the record makes clear that McCullough knew that his cervical abscess was the cause of his paralysis by then.

Under the rule stated in <u>Kubrick</u>, McCullough's claim accrued when he knew, or in the exercise of reasonable diligence should have known, that his paralysis was connected to some act or omission of the medical staff at the VA. A plaintiff need not have knowledge of fault in the legal sense, however; the statute of limitations will also begin to run "when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause." <u>Drazan v. United States</u>, 762 F.2d 56, 59 (7th Cir. 1985). Surely McCullough's prior visits to the VA for severe neck pain, followed by diagnosis and treatment of an abscess in his neck, created "suspicious circumstances" that would have led a reasonable person to seek medical or legal advice regarding his care at the VA.

In fact, McCullough's suspicions did lead him to seek legal advice within two months of his paralysis. Although the record does not reveal the precise date that McCullough first consulted with a lawyer, the law firm of Wagner, Vaughan & McLaughlin, P.A., requested copies of McCullough's VA medical

records on April 19, 2004, and again on October 8, 2004. (Doc. ## 26 at 9; 26-2 at 39-40). McCullough argues that this fact is irrelevant because the April 19, 2004, date falls within the two year limitations period. The Court disagrees as to its relevance.

The Court does not propose that the April 2004 records request is the accrual date of McCullough's claim. However, the records request establishes that McCullough consulted a lawyer at some point before April 19, 2004. The proximity of McCullough's legal consultation to the date of his injury suggests that McCullough had suspicions regarding a possible connection between his injury and some act or omission of the VA soon after he was told the cause of his paralysis.

The April 19, 2004, records request and the VA's prompt response to that request also establish that the critical facts regarding the VA's failure to diagnose McCullough's cervical abscess were not inherently "unknowable" in the month after his injury. Thus, the circumstances do not require tolling of the statute of limitations.

As the Supreme Court reasoned in <u>Kubrick</u>, only knowledge of the cause and existence of an injury is required to start the statute of limitations running because the fact of injury "may be unknown or unknowable until the injury manifests

itself; and the facts of causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." 444 U.S. at 122. Once the plaintiff is in possession of these critical facts, however, he need only ask others with training and experience in such matters to find out whether he has been wronged. Id.

McCullough possessed knowledge of his injury, the cause of that injury, and his previous unavailing attempts to seek medical treatment for severe pain in the exact location where the abscess was later found. He also was aware that the VA proceeded with elective surgery even though he had advised them that he had been experiencing a fever for several days prior to the surgery. (Doc. # 27-7 at 16). In addition, McCullough had access to medical records regarding his care and treatment at the VA, which were sought and produced as early as April 19, 2004. Therefore, it cannot be said that he was prevented from obtaining the information he needed to file his administrative claim.

The Court finds Price v. United States, 775 F.2d 1491 (11th Cir. 1985), instructive on this point. In Price, the plaintiff had a complete hysterectomy. During that procedure, the doctor discovered she was pregnant at the time of the surgery. Id. at 1493. Prior to the surgery, a serum

pregnancy test and a pelvic ultrasound were performed, both of which were reported as negative for pregnancy.  Id.  Within a few days after surgery, the plaintiff was informed by her doctor that she had been pregnant when the hysterectomy was performed.  Id.

The plaintiff did not attempt to ascertain what had gone wrong until almost two years later, when she consulted with an attorney, received her medical records, and learned that the pregnancy test had actually been positive.  Id.  A medical malpractice suit was then brought pursuant to the FTCA, and the district court granted summary judgment in favor of the Government, finding that the plaintiff's claim was barred by the statute of limitations.  Id.  The plaintiff appealed, arguing that her claim had not accrued until she obtained her medical records and discovered the true results of her pregnancy test.  Id.

The Eleventh Circuit affirmed the district court's holding, concluding that the plaintiff's claim accrued as of the date that she learned that her fetus had died.  Id. at 1494.  Because the plaintiff knew at that point that a mistake had been made, even though she did not know exactly what mistake or whose, she "had to know that her injury was probably connected to some act of those responsible for her

treatment." Id. Thus, the Eleventh Circuit found that "the only reason [the plaintiff] did not find out the particular cause of her injury was that she did not ask." Id.

The Eleventh Circuit distinguished Price from a prior case, Waits v. United States, in which the statute of limitations had been tolled until the plaintiff received medical records revealing the medical error. Id. (citing Waits v. United States, 611 F.2d 550 (5th Cir. 1980)). The Eleventh Circuit stated that Waits only required that the statute of limitations be tolled "where the plaintiff has no reason to know that his injury was connected to some act of the defendant, or where the plaintiff is prevented from filing a timely of action because of some action of the defendant." Id. However, because the plaintiff in Price had reason to know that the loss of pregnancy was connected to an act of the defendant and she promptly received her medical records once they were requested, there was no reason to toll the starting of the limitations period. Id.

McCullough might not have known the precise cause of his severe neurologic injury. However, once he learned that his paralysis had been caused by an abscess in his neck, he possessed sufficient facts to cause him to question the standard of care that he had received at the VA. Also, it is

evident that once he requested his medical records, they were promptly produced.  Thus, under the facts known to him "there was no reason for [him] not to seek advice from others as to whether [his] treatment had been negligent, and whether [he] should bring a legal claim."  Id.

McCullough argues that he did not have access to all of the relevant medical records shortly after his injury, as "one of the critical records (February 7, 2004) for determining doctor-related cause was not produced . . . until July 2008" and the "second critical record (February 9, 2004) has simply vanished."  (Doc. # 27 at 6-7).  The Court does not find the Veterans Administration's alleged failure to produce McCullough's complete medical records in 2004 and 2005 to be determinative of McCullough's ability to learn the pertinent facts related to the doctor-related cause of his injury. McCullough's preliminary expert disclosures in February and March 2006 reflect that, even without those records, Dr. Mickle and Dr. Abbott were able to form opinions that the abscess pre-existed the surgery and that McCullough's condition likely would have been detected and the resulting neurologic injury avoided had "appropriate diagnostic and medical care been rendered" to McCullough on his visits to the VA on February 8, 9, and 11, 2004.  (Doc. # 25-3 at 15; 26-7

at 2).

McCullough also asserts that the cause of his paralysis was his hernia surgery and that he had no reason to connect his injury to that surgery when his physicians repeatedly told him that his paralysis was caused by the cervical epidural abscess. (Doc. ## 25 at 11-12; 27 at 4, 13; 27-7 at 16). McCullough supports this argument with citation to cases in which courts have found that a plaintiff's cause of action did not accrue where the doctors gave "credible explanations" for the plaintiff's condition unrelated to any acts of his physicians. (Doc. # 25 at 12-13 (citing <u>Chamnes v. United States</u>, 835 F.2d 1350 (11th Cir. 1988); <u>Rosales v. United States</u>, 824 F.2d 799 (9th Cir. 1987))).

McCullough's argument is unavailing because it is based on the premise that McCullough's hernia surgery was the sole cause of his subsequent paralysis. The record contradicts this contention. Reports by McCullough's treating physicians and his own retained experts reflect that his paralysis was caused by the cervical abscess, although the hernia surgery may have contributed to his injury.[7] McCullough himself has

---

[7] The neurosurgeon who performed McCullough's spinal surgery noted on February 12, 2004, "His history begins, actually, approximately a week ago when he began to experience fever and sore throat." (Doc. # 26-2 at 51). Both of

24

asserted that his claim arises from "medical malpractice of the [VA's] medical providers' failure to timely diagnose and treat [his] cervical epidural abscess which caused his quadriplegia." (Doc. ## 1 at 2; 24 at 1).

In an affidavit, McCullough swears that "[a]t no time during my medical care at St. Joseph's Hospital or the [VA], did my doctors advise me that my cervical abscess existed before my hernia surgery at the VA hospital, and that the hernia surgery may have caused my paralysis." (Doc. # 27-7 at 16). However, it is of no consequence whether McCullough's physicians provided him with this information. More importantly, McCullough does not assert that he questioned doctors regarding the probable date of onset of the abscess or whether the hernia surgery may have had an impact on the severity of his neurologic injury. <u>Kubrick</u> and <u>Price</u> make clear that the relevant inquiry is whether a person possessing the same facts as the plaintiff would have sought medical or legal advice regarding the standard of care that he had received. <u>Kubrick</u>, 444 U.S. at 122-23; <u>Price</u>, 775 F.2d at

McCullough's experts have opined that McCullough had the epidural abscess prior to his surgery on February 11, 2004, and that his fever, neck pain, and swelling at the base of the neck "should have caused his physicians to investigate these findings further prior to doing an elective procedure." (Doc. ## 25-3 at 15; 26-7 at 2).

1494.

Based on the foregoing, the Court disagrees with McCullough's assertion that his medical malpractice claim did not accrue until February 22, 2006, the date that Dr. Mickle first advised McCullough's attorneys that McCullough's quadriplegia could likely have been prevented if the physicians at the VA had rendered proper diagnostic and medical care. (Doc. # 25 at 3). The statute of limitations began running no later than February 20, 2004, when McCullough was advised by his physicians that his paralysis had been caused by an abscess in his neck. It was then that he possessed sufficient facts to put a reasonable person on notice that his injury may have been connected to some act of negligence on the part of the VA in failing to diagnose the abscess during his four visits to the facility.[8] Once he possessed these critical facts, he "[had] two years to discover enough facts on which to base a claim." Jones, 294 Fed App'x at 479 (citing Kubrick, 444 U.S. at 120).[9]

---

[8] This Court renders no opinion as to whether the VA was negligent in its treatment of McCullough or whether this alleged negligence was the proximate cause of McCullough's injuries.

[9] This case is a tragedy on many levels. Without concluding that the treatment rendered to McCullough was negligent, there is no doubt that McCullough should have had

Accordingly, the Court finds that McCullough's claim in Count I of his complaint is barred by the two-year statute of limitations under 28 U.S.C. § 2401(b). It is therefore appropriate to grant the Government's motion for summary judgment as to Count I of McCullough's complaint and deny McCullough's motion for summary judgment as to liability on Count I.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff's Dispositive Motion for Partial Summary Judgment on Liability as to Count I (Doc. # 24) is **DENIED.**

(2) Defendant's Motion for Summary Judgment (Doc. # 26) as to Count I is **GRANTED.**

(3) Plaintiff's Dispositive Motion for Summary Judgment on Defendant's Third, Seventh, and Tenth Affirmative

---

his day in court. This is particularly true in the case of a veteran who has so nobly served his country and has suffered such a catastrophic injury. However, there are important policy reasons for having a statute of limitations, particularly when it is the sovereign that is involved. Following the law, which this Court is required to do, leaves no other alternative but to dismiss this case for lack of jurisdiction. The Court does not know why this lawsuit was not filed earlier and it would be unfair for the Court to speculate or second-guess the parties involved. The Court also does not speculate on what other remedies McCullough might have available to him at this time.

Defenses (Doc. # 25) is **DENIED**.

(4) The Clerk is directed to enter judgment in favor of the United States and against Samuel McCullough, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>22nd</u> day of May 2009.


VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies:

All Counsel of Record